# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 04-CR-67-LRR |
| vs. | **SENTENCING MEMORANDUM** |
| UNIS BAH, | |
| Defendant. | |

_____

## *I. INTRODUCTION*

On July 27, 2006, this matter came before the court on remand from the Eighth Circuit Court of Appeals for the resentencing of Defendant Unis Bah. *See generally United States v. Bah*, 439 F.3d 423 (8th Cir. 2006). In calculating Defendant's advisory Sentencing Guidelines range,[1] the court decided whether Defendant was subject to (1) a

---

[1] Although application of the Sentencing Guidelines is no longer mandatory, [in the Eighth Circuit] district courts are still required to consult the Guidelines and take them into account in calculating a defendant's sentence. A district court must calculate a defendant's advisory Guidelines sentencing range based on his total offense level, criminal history category, and any appropriate departures. The court may also vary from the advisory Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a) as long as the resulting sentence is reasonable. Proper application of the Guidelines "remains the critical starting point" for fashioning a reasonable sentence under § 3553(a), and a sentence within the properly calculated Guidelines range is presumed to be reasonable.

(continued...)

six-level increase pursuant to USSG §2B1.1(b)(9); (2) a two-level increase pursuant to USSG §2B1.1(b)(10); (3) a four-level decrease pursuant to USSG §3B1.2; (4) a two-to-three level decrease pursuant to USSG §3E1.1; and (5) a two-level increase pursuant to USSG §3C1.1.

## II. PROCEDURAL BACKGROUND

On June 30, 2004, a grand jury charged Defendant in four counts of a five-count Indictment. On August 11, 2004, Defendant pled guilty to Count 4 of the Indictment. Count 4 charged that Defendant knowingly and willfully made a false, fraudulent and fictitious material statement and representation within the jurisdiction of the Department of Homeland Security, a department and agency of the United States, in violation of 18 U.S.C. § 1001. Specifically, Count 4 charged that Defendant told an Immigration and Customs Enforcement ("ICE") agent that he did not know the purpose of his overnight trip from Maryland to Iowa with Abdulaziz Bah ("Abdulaziz"), when in truth he knew the purpose of the trip was to pick up a package at a post office in Cedar Rapids, Iowa. On August 26, 2004, the court accepted Defendant's guilty plea.

On November 10, 2004, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSIR"). On December 7, 2004, the USPO revised the PSIR. On February 7 and 9, 2005, the government and Defendant filed their respective sentencing memoranda. On March 14, 2005, the government filed a Supplemental Sentencing Memorandum.

On February 6 and March 18, 2005, the court held a sentencing hearing. Consistent

---

[1](…continued)
*United States v. Jeremiah*, 446 F.3d 805, 807 (8th Cir. 2006) (citing, in part, *United States v. Booker*, 543 U.S. 220, 264 (2005)). The instant sentencing memorandum only discusses the legal issues the court resolved in calculating Defendant's advisory guidelines sentencing range.

with the recommendations in the PSIR, the court determined Defendant's advisory guidelines range was 10 to16 months' imprisonment and imposed a sentence of 30 months' imprisonment. The court dismissed the remaining counts in the Indictment as to Defendant.

On March 28, 2005, Defendant appealed. On March 3, 2006, the Eighth Circuit Court of Appeals vacated Defendant's sentence and remanded for resentencing. *See Bah*, 439 F.3d at 430 (holding court erred when it utilized the USSG §2B1.1(c)(3) cross-reference to USSG §2L2.1 in determining Defendant's advisory guidelines sentencing range). The Eighth Circuit Court of Appeals directed the court to calculate Defendant's advisory sentencing guideline range using USSG §2B1.1. *Id.*

The court scheduled Defendant to be resentenced. On May 4 and 10, 2006, Defendant and the government filed resentencing memoranda, respectively. On May 19, 2006, a resentencing hearing ("Hearing") commenced but did not finish.

On May 26, 2006, the court notified Defendant that the court was considering (1) not giving Defendant an adjustment in his advisory guidelines sentence for acceptance of responsibility based on his apparent denial of relevant conduct and (2) giving Defendant an adjustment for obstruction of justice based on apparent false statements in the Stipulation of Facts in his plea agreement.

On July 27, 2006, the Hearing concluded. Defendant withdrew his objections to the PSIR and waived his right to appeal. The court then sentenced Defendant in a manner consistent with the instant Sentencing Memorandum.

### III. ADVISORY GUIDELINES RANGE CALCULATION

To determine Defendant's advisory guidelines range, the court used USSG §2B1.1. *Id.* at 430. Section 2B1.1 is the corresponding guideline for Defendant's violation of 18 U.S.C. § 1001. USSG, App. A. Under Section 2B1.1, Defendant's base offense level is

3

6. USSG §2B1.1(a)(2).

### A. Six-Level Increase Pursuant to USSG §2B1.1(b)(9)

The first issue in the resentencing was whether Defendant was subject to a six-level increase pursuant to USSG §2B1.1(b)(9). Section 2B1.1(b)(9) provides:

> If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

USSG §2B1.1(b)(9). On the facts of this case, if a USSG §2B1.1(b)(9) increase is imposed, it must ultimately be a six-level increase; a two-level increase would only result in an offense level of 8. *See id.* The government bears the burden to prove an increase is warranted by a preponderance of the evidence. *See United States v. Craiglow*, 432 F.3d 816, 820 (8th Cir. 2005) (discussing calculating amount of loss for purposes of §2B1.1); *see also Bah*, 439 F.3d at 426 n.1 (holding district court did not err in applying preponderance of the evidence standard when imposing sentence because the record established that the court applied the guidelines in an advisory manner).

The court found a six-level increase was appropriate because Defendant's offense involved sophisticated means. The court considered all relevant conduct, insofar as permitted by USSG §1B1.3(a).[2]

---

[2] Unless otherwise specified, such relevant conduct includes:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(continued…)

4

The advisory guidelines define "sophisticated means" as

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates

---

[2](…continued)

> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> (4) any other information specified in the applicable guideline.

USSG §1B1.3(a).

5

> sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

USSG §2B1.1 cmt. (n.8(A)). Defendant's offense of lying to an ICE agent was one part of a fraudulent scheme that involved sophisticated means. Defendant and Abdulaziz, although domiciled in Maryland and with no connection to Iowa, had fraudulent documents shipped to Iowa. Defendant was arrested while picking up these documents in Iowa, and stands convicted of lying to law enforcement officials about the purpose of his cross-jurisdictional trip.

Moreover, the fraudulent scheme itself involved highly sophisticated means in other respects. Defendant and Abdulaziz, who lived in Maryland, conspired to submit fraudulent visa applications to foreign consulates in several major cities in the United States to help Africans gain illegal entry into the European Union. Defendant and Abdulaziz put the false visa applications together by producing a number of false documents, including false immigration documents, false letters of employment and false travel documents. The fraudulent scheme literally spanned the globe: Defendant and Abdulaziz worked with individuals in a number of West African nations, including Guinea and Sierra Leone, and corrupt consular officials in the United States, to use fraudulent United States documents to help West Africans illegally gain entry into the European Union. Defendant knew the full scope of the conspiracy and the actions of Abdulaziz and profited from it. Defendant's offense clearly involved sophisticated means.

Defendant initially contended that his conduct should be viewed narrowly; he contended that his offense did not involve sophisticated means because there was nothing in itself sophisticated about the manner in which he lied to law enforcement agents. Defendant pointed out that he lied to the ICE agent's face and without the help of any

technology.  Pursuant to USSG §1B1.3(a), however, the court was not required to view Defendant's lie in complete isolation.  This is not a case where the relevant guideline is limited to only the conduct set forth in the count of conviction.  *Cf. Bah*, 439 F.3d at 427-28 (interpreting USSG §2B1.1(c)(3) cross-reference).  Relevant conduct in this case includes

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

USSG §1B1.3(a).

Accordingly, the court found that Defendant's offense level should be increased to level 12.  USSG §2B1.1(b)(9).[3]

---

[3] Had Defendant not ultimately withdrawn his objection to the PSIR's conclusion that his offense involved sophisticated means, the court was also prepared to find (1) Defendant participated in relocating a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials and (2) a substantial part of a fraudulent scheme was committed from outside the United States.

*Relocation*

The court was prepared to find that Defendant participated in relocating a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials. Abdulaziz testified that he and Defendant conspired together in a fraudulent scheme to use false United States documents to obtain visas for African nationals to enter the European Union. Abdulaziz testified that he was the leader of a nine to ten person conspiracy, in which Defendant was the "Number Two" man. Abdulaziz repeatedly paid Defendant between five and six hundred dollars for the use of Defendant's green card to make fraudulent documents.

(continued…)

### *B. Two-level Increase Pursuant to USSG §2B1.1(b)(10)*

The second issue in the sentencing was whether Defendant was subject to a two-level increase pursuant to USSG §2B1.1(b)(10). In pertinent part, §2B1.1(b)(10) provides:

> If the offense involved . . . (i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

USSG §2B1.1(b)(10). The government bears the burden to show such an increase is

---

³(…continued)
The fraudulent scheme led by Abdulaziz and Defendant was originally located in Washington, D.C.; fraudulent visa applications were submitted to European embassies there. Abdulaziz and Defendant eventually moved the fraudulent scheme to New York, New York and Chicago, Illinois, because officials at Ireland's and Holland's American embassies began to catch on to their fraudulent scheme.

Abdulaziz and Defendant were arrested after driving to Iowa from Maryland to pick up fraudulent documents as part of their scheme. Contrary to Defendant's false statements, Defendant knew the purpose of his trip with Abdulaziz to Iowa. Defendant participated in relocating a fraudulent scheme from Washington, D.C. to other jurisdictions, including Iowa, in order to avoid detection of law enforcement and regulatory officials.

*Foreign Activity*

The court was also prepared to find that a substantial part of a fraudulent scheme was committed from outside the United States. Abdulaziz testified that one of the "critical" parts of the fraudulent scheme with Defendant involved obtaining passports and photographs from a number of West African countries, including Sierra Leone and Guinea. The fraudulent scheme also involved bribing an employee at an airport in Guinea. Obviously, money was also collected in the foreign countries; this money was either paid by or on behalf of those wishing to enter the European Union illegally through use of the fraudulent scheme.

warranted by a preponderance of the evidence. *See Craiglow*, 432 F.3d at 820 (discussing calculating amount of loss for purposes of §2B1.1).

The record established that Defendant's scheme involved the possession of five or more means of identification that were unlawfully produced from other means of identification. According to Abdulaziz's testimony and the PSIR, fraudulent documents, including fake green cards and passports, were used to obtain more than five fraudulent visas. These include but are not limited to two visitor visas issued by the Chicago Irish Consulate for the Keita Fode and Mohamed Keita identities in January of 2004 and the three visitor visas issued by the Chicago Irish Consulate in February of 2004 for the Mohamed Conte, Lasana Conte and Unis Conte identities. *See* PSIR ¶57E.

Accordingly, the court found that Defendant's offense level should be increased two levels to 14. USSG §2B1.1(b)(10).

### C. Adjustment for Role

The third issue in this sentencing was whether Defendant was entitled to a four-level decrease pursuant to USSG §3B1.2. Defendant initially contended he was a minimal participant in the fraudulent scheme when compared to Abdulaziz. Section 3B1.2 provides:

> Based on the defendant's role in the offense, decrease the offense level as follows:
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
> In cases falling between (a) and (b), decrease by 3 levels.

USSG §3B1.2. The downward adjustment for a minimal participant should be used infrequently. *United States v. Bueno*, 443 F.3d 1017, 1022 (8th Cir. 2006) (citing USSG

§3B1.2. cmt. (n.4)). Defendant bears the burden to prove he is eligible. *Id.*

The court found no downward adjustment for role was warranted in this case. The court credited the testimony of Abdulaziz that he and Defendant worked together on this scheme. Abdulaziz testified that Defendant was nearly as deeply involved in the scheme as he was. Defendant was the "Number Two" man in a nine to ten person conspiracy. Defendant's own personal identification documents were repeatedly used in the scheme. Defendant received scanned documents in emails from Abdulaziz, Defendant personally submitted fraudulent applications to foreign embassies and typed up false letters of employment, and Defendant drove to Iowa to pick up a passport. Defendant was neither a minimal nor a minor participant in this criminal activity. He was not "substantially less culpable than the average participant." *Id.* (citing USSG § 3B1.2, cmt. (nn.2 & 3)).

Accordingly, the court found that Defendant's offense level should not be decreased four levels for his role in the offense. USSG §3B1.2.

### D. Acceptance of Responsibility

The fourth issue in this sentencing was whether Defendant was entitled to a two- or three-level decrease pursuant to USSG §3E1.1 for acceptance of responsibility. Section 3E1.1 provides:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to

10

> allocate their resources efficiently, decrease the offense level by 1 additional level.

USSG §3E1.1. Defendant bears the burden to prove he is entitled to a downward adjustment for acceptance of responsibility. *United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999).

To determine whether a defendant qualifies for acceptance of responsibility, the court may consider whether that defendant "truthfully admit[s] the conduct comprising the offense[] of conviction, and truthfully admit[s] or not falsely den[ies] any additional relevant conduct for which the defendant is accountable." *Id.* cmt. (n.1(a)). Although a defendant is not required to volunteer relevant conduct to obtain acceptance of responsibility, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and her determination in this regard "is entitled to great deference on review." *Id.* cmt. (n.5).

The PSIR provided that Defendant is entitled to acceptance of responsibility because he pled guilty to Count 4. The court, however, declined to grant Defendant a decrease for acceptance of responsibility. The PSIR was prepared in 2004 and without the benefit of Abdulaziz's testimony, which the court found credible. The court knows much more about Defendant's conduct and lies now than it did at the time of his original sentencing.

Defendant's acceptance of responsibility must be examined in light of Abdulaziz's testimony at the Hearing. "[W]here a court of appeals vacates a sentence . . . and remands the case for resentencing without placing any limitations on the district court, the court 'can hear any relevant evidence on that issue that it could have heard at the first hearing.'" *United States v. Dunlap*, ___ F.3d ___, No. 05-2996, 2006 WL 1716159, at *2 (8th Cir.

June 23, 2006) (quoting *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992)). The court credited Abdulaziz's testimony that Defendant's conduct far exceeded the conduct Defendant admitted to in his plea to the false statement. In his objections to the PSIR, Defendant denied this relevant conduct and totally minimized his significant role in this fraudulent scheme. Defendant had not truthfully admitted the conduct comprising the offense of conviction and falsely denied and frivolously contested additional relevant conduct for which he is accountable under USSG §1B1.3. The court found Defendant had not accepted responsibility.

Accordingly, the court found that Defendant's offense level should not be decreased for acceptance of responsibility. USSG §3E1.1.

### E. Obstruction of Justice

The fifth issue in this sentencing was whether Defendant was subject to a two-level increase pursuant to USSG §3C1.1 for obstruction of justice. Section 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

USSG §3C1.1.

The court found Defendant willfully obstructed and impeded and attempted to obstruct and impede the administration of justice during the investigation, prosecution and sentencing of Count 4. The court further found this conduct related to Count 4 and relevant conduct and closely related offenses, namely, the other counts in the Indictment the court dismissed consistent with the plea agreement. Specifically, the court found Defendant lied in Paragraphs 20G and 20K of the Stipulation of Facts in the Plea

12

Agreement. Defendant, while testifying under oath at the plea hearing, affirmed that the Stipulation of Facts was true. The court found Abdulaziz's testimony at the Hearing credible and found that Defendant, contrary to his assertions in the Stipulation of Facts, knew the full scope of the fraudulent documents scheme and knew its details. Defendant's lies in the Stipulation of Facts were material because the Stipulation of Facts was intended to be used in determining the appropriate sentence. His lies were intentional and designed to influence the court to give him a lower sentence.

Accordingly, the court found that Defendant's offense level should be increased two levels for obstruction of justice. USSG §3C1.1. This brought Defendant's adjusted offense level to 16.

## IV. CONCLUSION

The court found that Defendant's base offense level under the advisory Sentencing Guidelines is **6**. USSG §2B1.1(a)(2). The court found that Defendant is subject to a **six**-level increase pursuant to USSG §2B1.1(b)(9), a **two**-level increase pursuant to USSG §2B1.1(b)(10) and a **two**-level increase pursuant to USSG §3C1.1. This resulted in an adjusted offense level of **16**. Because Defendant was Criminal History Category I and no other adjustments applied, the court found that Defendant's advisory Sentencing Guidelines range was 21-27 months' imprisonment. *See* USSG Sentencing Table.

**IT IS SO ORDERED.**

**DATED** this 28th day of July, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA